IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| RODNEY G. SHEPARD,<br><br>                         Plaintiff<br>          VS.<br><br>SHERIFF IRA EDWARDS, *et al.*,<br><br>                         Defendants | NO.  3:08-CV-7 (CDL)<br><br>PROCEEDINGS UNDER 42 U.S.C. §1983<br>BEFORE THE U. S. MAGISTRATE JUDGE |

## ORDER AND RECOMMENDATION

Before the court are defendant Jeffrey Clark's MOTION FOR SUMMARY JUDGMENT (Tab #53) and defendant Joseph Lumpkin's MOTION FOR SUMMARY JUDGMENT (Tab #51).  Plaintiff Rodney Shepard has also filed motions seeking summary judgment against each of these defendants as well as responses to the aforementioned motions.  Tabs #40 and #45.  The undersigned's analysis of the above motions will begin with defendant Clark's motion.

### LAW OF SUMMARY JUDGMENT

Under Rule 56 (c), Federal Rules of Civil Procedure, the court is required to grant motions seeking summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The law is clear that summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial. *Celotex Corporation vs. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). The movant's burden is discharged simply by pointing out that there is an 'absence of evidence to support the non-moving parties' case. Once the movant has met this burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Id. Anderson vs. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986); *Matsushita Elec. Ind. Co. vs. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348 (1986).

While the court must consider the evidence in the light most favorable to the non-moving party, the mere existence of some dispute shall not defeat an otherwise properly supported motion for summary judgment since the non-movant's obligation is to demonstrate a genuine issue of material fact. Thus, if a non-moving party brings forth evidence in support of his position on an issue on which he bears the burden of proof at trial that is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson vs. Liberty Lobby, Inc.*, 477 U.S. at 249, 250, 91 L.Ed.2d at 212 (citations omitted). Similarly, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id*. 477 U.S. at 252, 91 L.Ed.2d at 214.

FACTUAL BACKGROUND

The principal factual basis upon which defendant Clark's motion seeking summary judgment is predicated is his affidavit to which is attached copies of affidavits for arrest and warrants for arrest that were issued by the Magistrate Court of Athens-Clarke County Georgia. Attached to Clark's affidavit are copies of the various police reports which were prepared either by him or by his colleagues within the police department prior to the January 25, 2007 submission of the aforementioned arrest warrant applications. The incident out of which the criminal investigation arose, and in connection with which arrest warrants were issued for plaintiff's arrest, was the shooting of David a/k/a Morris Lumpkin on November 19, 2006, at a single family dwelling located in Athens, Georgia.

Information developed during the investigation of this shooting revealed that an individual by the name of Terrence or T. White had been robbed several days earlier. The victim of the shooting incident, Morris Lumpkin, had mentioned to witnesses that he was a participant in this robbery. Several days before the shooting, Terrence White, Eric Hassel, and plaintiff Rodney Shepard were observed together in close proximity to a firearm.

On November 17, 2006, the evening before the shooting, a party was held at the residence of Morris Lumpkin. The party continued into the early morning hours of November 18th. During the party, one Britney Hemphill received a telephone call from Eric Hassel asking if Lumpkin was at the party. She replied that he was and shortly thereafter Hassel appeared at the party and asked to speak to Lumpkin outside. Lumpkin declined Hassel's request to go outside.

After the party, Lumpkin traveled to a residence located at 430 Moreland Avenue. Hassel subsequently appeared at this residence and asked once again to speak to Lumpkin and for Lumpkin to accompany him down the street. Hassel's request to speak and invitation to leave were declined. Following this exchange, Hassel remained outside the residence with one Daniel Gbum. While Hassel and Gbum were talking, plaintiff Shepard appeared and had a whispered conversation with Hassel. Shepard was overheard asking Hassel about Lumpkin's whereabouts. Later on during the morning of November 18th, Hassel and Shepard entered the residence and again asked to speak with Lumpkin. They were informed that Lumpkin was asleep. Plaintiff Shepard and Hassel then left the residence. A few minutes later, after Lumpkin had awoke and gone into the living room of the residence, a person with a hood over his head walked into the residence and fired several shots into Lumpkin which resulted in his death.

After the shooting, police interviewed several individuals including one Binika Hankton, an acquaintance of plaintiff Shepard. Hankton subsequently recorded several telephone conversations she had with plaintiff Shepard and identified his voice on the recordings. On November 27, 2006, Hankton reported to police that plaintiff had said that he did not believe T. White would say anything about the incident because if T. White hired someone to do the shooting, he would get the death penalty. Plaintiff Shepard also told Hankton that in his view, because of Lumpkin's background of robberies, law enforcement would eventually let the matter die down.

- 3 -

Later, on or about December 8, 2006, Hankton provided another recorded telephone conversation between herself and plaintiff Shepard to the Athens-Clarke County Police. During the conversation, the plaintiff informed Hankton that he had observed Hassel putting the gun in trees near Hankton's residence. Plaintiff Shepard also added that he did not think that the police had checked the area for the gun, and that he wanted to put his hands on the gun as soon as he returned to Athens. Plaintiff Shepard then described to Hankton where the gun could be found.

The area to which Shepard referred during his conversation with Hankton was searched on or about December 8, 2006, and a weapon was located. Shell casings taken into evidence from the residence at 430 Moreland Avenue following the shooting incident were identified as having been fired from the weapon that was found on December 8 , 2006. Binika Hankton provided yet another recorded telephone conversation to police on or about January 3, 2007, during which plaintiff stated that the weapon found by police would be of no value because of the delay in finding it, and he instructed Hankton to contact T. White so that he could watch over her.

In light of the above information, defendant Clark applied for and received warrants for the plaintiff's arrest on January 25, 2007. Plaintiff Shepard was subsequently arrested. Following his arrest, Shepard was indicted, tried, and convicted of, *inter alia,* murder, and sentenced to life.

## DISCUSSION

With regard to defendant Clark, the principal claim asserted against him by plaintiff Shapard is that he caused the plaintiff to be deprived of rights secured to him under the Fourth Amendment to the United States Constitution in connection with his application for the issuance of arrest warrants for the plaintiff. In particular, Shepard's COMPLAINT, his MOTION FOR SUMMARY JUDGMENT as to Clark, as well as his RESPONSE to Clark's MOTION FOR SUMMARY JUDGMENT contend that Clark lacked probable cause when applying for the aforementioned warrants.

At the outset, the undersigned notes that defendant Clark's chief contention in his MOTION FOR SUMMARY JUDGMENT is that he is entitled to such on the basis of qualified immunity. The test for qualified immunity in this circuit is two pronged: (1) was the government official acting within the scope of his discretionary authority; and (2) whether the official's conduct violated "clearly established law." *Maggio v. Sipple*, 211 F. 3d 1346, 1350 (11th Cir. 2000). *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

In this case is it apparent that defendant Clark was acting within the scope of his discretionary authority as a police officer. With regard to the second part of the analysis, the appropriate legal standard used to evaluate a 42 U.S.C. § 1983 claim which alleges that a police officer caused a plaintiff to be unconstitutionally arrested by presenting a judge with a complaint and supporting affidavit which failed to establish probable cause has been addressed by the Supreme Court in the case of *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092 (1986). Therein, the Court concluded that only where a warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will an officer's shield of immunity be lost.

In support of his motion, and in an effort to demonstrate that there was ample probable cause to support his applications for warrants, defendant Clark has produced affidavits, copies of the applicable arrest warrants, and copies of the investigative materials and reports which had been generated at the time the warrant applications were made. Defendant Clark further asserts that at the time he applied for the warrants, he provided the issuing magistrate judge with a summary of all of the aforementioned information under oath. The substance of these documents has already been outlined in the foregoing section titled Factual Background and will therefore not be restated here.

Having reviewed the affidavits and other documentary evidence submitted by both defendant Clark and plaintiff Shepard, it is clear that the evidence of probable cause submitted by Clark to the county magistrate judge in the applications for the arrest warrants was more than sufficient. As such, not only is Clark entitled to summary judgment on the basis of qualified immunity but also on the basis that no fourth amendment violation occurred. **IT IS SO RECOMMENDED**.

With regard to defendant Lumpkin's MOTION FOR SUMMARY JUDGMENT, only a brief analysis is necessary. Plaintiff Shepard has attempted to implicate defendant Lumpkin on the basis that, as Chief of Police (and therefore defendant Clark's supervisor), defendant Lumpkin should be held liable for the constitutional deprivations that defendant Clark allegedly caused the plaintiff. In order to do so, the plaintiff would need to show, among other things, an underlying constitutional deprivation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Blyden v. Mancusi*, 186 F.3d 252, 265 (2nd Cir. 1999). In view of the fact that the undersigned has already found the existence of probable cause for plaintiff's arrest, any need to further consider plaintiff's claims of supervisory liability has been eliminated. As such, defendant Lumpkin's MOTION FOR SUMMARY JUDGMENT should be **GRANTED**. **IT IS SO RECOMMENDED**.

As noted above, also pending before the court are plaintiff Shepard's MOTION FOR SUMMARY JUDGMENT as to defendant Clark (Tab #40), Shepard's MOTION FOR SUMMARY JUDGMENT as to defendant Lumpkin (Tab #45), and several Motions to Amend/Correct the aforementioned motions and their respective responses (Tab #47, Tab #92, Tab #107, Tab #108, Tab #112, Tab #114).

In view of the above, **IT IS RECOMMENDED** that Shepard's MOTION FOR SUMMARY JUDGMENT as to defendant Clark (Tab #40) and Shepard's MOTION FOR SUMMARY JUDGMENT as to defendant Lumpkin (Tab #45) be **DENIED**. As for the above enumerated motions seeking to amend and correct, said motions are **DENIED** as moot. **SO ORDERED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to the RECOMMENDATIONS herein made with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

**SO ORDERED and RECOMMENDED** this 31st day of OCTOBER, 2008.

CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE